IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ROBERTO F., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, JIMMY S., TRACIE H., L.F., I.A.,
*Appellees.*

No. 1 CA-JV 13-0209
FILED 08-12-2014

Appeal from the Superior Court in Mohave County
No. S8015AD201200034
The Honorable Richard Weiss, Judge

**VACATED, REVERSED, AND REMANDED**

COUNSEL

Mohave County Legal Defender's Office, Kingman
By Diane S. McCoy
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee Arizona Department of Child Safety*

Law Office of Michele Holden P.L.L.C., Kingman
By Michele Holden
*Counsel for Appellees Jimmy S. and Tracie H.*

**OPINION**

Judge Kenton D. Jones delivered the opinion of the Court, in which Presiding Judge Peter B. Swann joined and Judge Patricia K. Norris specially concurred.

J O N E S, Judge:

¶1          The juvenile court terminated the parental rights of Roberto F. (Father) to two minor children, L.F. and I.A. (the children), in late 2011. While his appeal of that termination order was pending, the juvenile court, in a separate action, granted a petition for adoption of the children in favor of Jimmy S. and Tracie H. (Foster Parents).  This Court later vacated the juvenile court's order terminating Father's parental rights, and Father then moved to set aside the adoption in the juvenile court.  The court denied his motion and Father timely appealed.  On December 18, 2013, we issued an order vacating the adoption as well as the order denying Father's motion to set aside the adoption, with a written decision to follow.  This is that decision.

**FACTUAL AND PROCEDURAL HISTORY**

¶2          Father is the biological father of two minor children, L.F. and I.A.  In November 2011, Father's parental rights were terminated as to the children.  Father timely appealed the termination order.

¶3          While Father's termination appeal was pending before this Court, the Arizona Department of Child Safety (DCS),[1] on behalf of Foster Parents, filed a separate action requesting the juvenile court allow the Foster Parents to adopt the children.  Following an adoption hearing, the juvenile court granted that request and entered an order of adoption. Father was not provided notice of the adoption petition, adoption hearing,

---

[1]        Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Arizona Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter.  See ARCAP 27.

or entry of the adoption order as his rights had been terminated. *See* Ariz. Rev. Stat. (A.R.S.) § 8-106(B)(2).[2]

**¶4**        Subsequently, this Court vacated the order terminating Father's parental rights to the children. *Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 59-60, ¶ 73, 301 P.3d 211, 225-26 (App. 2013). Thereafter, this Court's mandate issued in *Roberto F.*, finalizing the restoration of Father's parental rights. *See* Ariz. R.P. Juv. Ct. 107(H).

**¶5**        After we vacated the termination order, but before we issued the mandate, Father moved the juvenile court to set aside the adoption order, pursuant to Arizona Rule of Procedure for the Juvenile Court (ARPJC) 85(A), which incorporates by reference Arizona Rule of Civil Procedure 60(c). The juvenile court denied Father's motion and Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-2101(A)(1).

## ISSUE PRESENTED

**¶6**        Father asserts the juvenile court lacked jurisdiction[3] to enter the order of adoption while his appeal of the termination order was pending. Specifically, Father argues that ARPJC 103(F) divested the juvenile court of jurisdiction to grant the adoption petition while he was appealing the order terminating his parental rights. Foster Parents, along

---

[2]        Absent material revisions after the relevant date, we cite a statute's current Westlaw version.

[3]        Three types of jurisdiction exist: "[s]ubject matter jurisdiction, personal jurisdiction and jurisdiction to render a particular judgment." *Fry v. Garcia*, 213 Ariz. 70, 72 n.2, ¶ 9, 138 P.3d 1197, 1199 n.2 (App. 2006) (citing *Sil-Flo Corp. v. Bowen*, 98 Ariz. 77, 81, 402 P.2d 22, 25 (1965)). "Subject matter jurisdiction means the power to hear and determine a general class of cases to which a particular proceeding belongs." *State ex rel. Milstead v. Melvin*, 140 Ariz. 402, 404, 682 P.2d 407, 409 (1984). It is without question that the juvenile court has the power to hear and adjudicate adoptions generally. Ariz. Const. art. 2, § 15; A.R.S. § 8-202(B); *see* A.R.S. § 8-102.01. Therefore, we address herein the third type of jurisdiction — whether the juvenile court had jurisdiction to enter the order of adoption during the pendency of a termination appeal. *See Taliaferro v. Taliaferro*, 186 Ariz. 221, 223, 921 P.2d 21, 23 (1996) (noting jurisdiction, in certain contexts, means "the authority to do a particular thing").

with DCS, contend that ARPJC 103(F) cannot be read to limit the authority of the juvenile court to act in a new matter (the adoption) concerning new parties if the appealing parent does not obtain a stay of the termination order under ARPJC 103(B).[4] Absent a stay pursuant to ARPJC 103(B), Foster Parents and DCS contend the juvenile court is free to proceed with the adoption and is therefore not required to postpone the adoption proceeding until the biological parent's termination appeal process has concluded.

**STANDARD OF REVIEW**

**¶7**        We review issues of jurisdiction de novo. *Thomas v. Thomas*, 203 Ariz. 34, 35-36, ¶ 7, 49 P.3d 306, 307-08 (App. 2002); *Murphy v. Bd. of Med. Exam'rs*, 190 Ariz. 441, 446 n.8, 949 P.2d 530, 535 n.8 (App. 1997). We also review de novo the interpretation of statutes and court rules. *Cranmer v. State*, 204 Ariz. 299, 301, ¶ 8, 63 P.3d 1036, 1038 (App. 2003).

**DISCUSSION**

**I.      Father's Appeal of the Termination Order Divested the Juvenile Court of Jurisdiction to Enter the Adoption.**

**¶8**        A termination proceeding begins with the filing of a petition by "[a]ny person or agency that has a legitimate interest in the welfare of a child." A.R.S. § 8-533(A). As applicable here, the juvenile court may sever a parent-child relationship if it finds any of the grounds enumerated in § 8-533(B) has been established by clear and convincing evidence and concludes by the preponderance of the evidence that the termination of the parent's rights is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). Entry of "[a]n order terminating the parent-child relationship shall divest the parent and the child of all legal rights, privileges, duties and obligations with respect to

---

[4]      Although it is true that in some instances an adoption proceeding may contain entirely separate parties from a related termination proceeding, that is not true in this case. Both DCS and Foster Parents were parties to Father's termination case. There were no "new" parties involved in the adoption proceeding. The only difference was that Father was not provided notice and, accordingly, did not participate.

each other . . . ."  A.R.S. § 8-539.[5]  "The order is conclusive and binding on all persons from the date of entry."  A.R.S. § 8-538(A).

¶9          Adoption is a separate proceeding from an action to terminate a parent-child relationship.  An adoption proceeding commences with the filing of an adoption petition by a "potential adoptive parent or parents, an agency or the division," which must contain specified information.  A.R.S. § 8-109(A).  Once the petition to adopt has been filed, an adoption hearing is set by the juvenile court.  A.R.S. § 8-111.  Notice of the hearing must be sent to, *inter alia*, all persons required to give consent to the adoption pursuant to § 8-106; notice, however, need not be sent to a parent whose rights have been terminated.  A.R.S. § 8-106(B)(2).  The juvenile court may grant an adoption if the petitioner is able to demonstrate by a preponderance of the evidence: (1) "the petitioner is a fit and proper person to adopt;" and (2) the adoption "is in the best interests of the child to be adopted."  Ariz. R.P. Juv. Ct. 84(B).

¶10          The question presented by Father's appeal is whether the notice of appeal of an order terminating a parent's rights divests the juvenile court, in a subsequently filed adoption proceeding, of jurisdiction to proceed with the adoption.  We conclude that it does.

### A.  Ariz. R.P. Juv. Ct. 103(F) Applies to Any Issue Presented to the Juvenile Court.

¶11          ARPJC 103(A) allows any aggrieved party to file an appeal with this Court from a final order of the juvenile court.  ARPJC 103(F) sets forth the circumstances under which the juvenile court possesses the legal authority to act while that appeal is pending.  It provides, in pertinent part:

> During the pendency of an appeal, the juvenile court may proceed within its legal authority on an issue remaining before it or newly presented to it to the extent (1) the appellate court has specifically authorized or directed the juvenile court to rule on the issue; (2) the juvenile court's ruling on the issue would be in furtherance of the appeal; (3) applicable statutory law or judicial rule confers continuing jurisdiction on the juvenile court; (4) the juvenile court's ruling on the issue would not legally or practically prevent the appellate court

---

[5]          A.R.S. § 8-539 provides its own exception: the right of inheritance and support terminates only upon entry of a final order of adoption rather than the entry of an order terminating the parent-child relationship.

from granting the relief requested on appeal; or (5) the issue arises from a motion to dismiss the appeal filed by the appellant and presented to the juvenile court for ruling at a time before the clerk of the superior court forwards the record to the appellate court pursuant to Rule 105(D).

Ariz. R.P. Juv. Ct. 103(F).

¶12　　　　Therefore, our inquiry involves two steps: (1) does ARPJC 103(F) apply only to issues raised in the appealed termination case, or to any newly raised issue, whether arising within the appealed case or in a subsequently filed juvenile court action; and (2) if the latter, does the granting of an adoption decree during the pendency of a termination appeal fall within any of the circumstances under which the juvenile court is authorized to proceed under ARPJC 103(F)?

¶13　　　　This inquiry requires the interpretation of court rules and statutes. When interpreting a court rule, we employ principles of statutory construction. *Potter v. Vanderpool*, 225 Ariz. 495, 498, ¶ 8, 240 P.3d 1257, 1260 (App. 2010). When the language of a rule is clear and unambiguous, we need not employ other methods of construction and simply give effect to that language. *Fragoso v. Fell*, 210 Ariz. 427, 430, ¶ 7, 111 P.3d 1027, 1030 (App. 2005). If the language is inconclusive or ambiguous, "we then consider other factors such as [the rule or statute's] context, subject matter, effects, consequences, spirit and purpose." *Vega v. Sullivan*, 199 Ariz. 504, 507, ¶ 8, 19 P.3d 645, 648 (App. 2001).

¶14　　　　Contrary to Foster Parents' contention, we conclude ARPJC 103(F)'s clear and unambiguous language does not limit its restrictive effect to only those issues filed in the appealed case. ARPJC 103(F) states that "during the pendency of an appeal, the juvenile court may proceed within its legal authority on an issue remaining before it or newly presented to it to the extent [certain circumstances exist] . . . ." We will not read into ARPJC 103(F) a limitation which is not expressly provided in the rule itself. *See Patches v. Indus. Comm'n of Ariz.*, 220 Ariz. 179, 182, ¶ 10, 204 P.3d 437, 440 (App. 2009) ("It is the rule of statutory construction that courts will not read into a statute something which is not within the express manifest intention of the Legislature as gathered from the statute itself.") (internal quotations omitted) (citation omitted).

¶15　　　　Significant to our conclusion is the use of the term "juvenile court" within ARPJC 103(F). That term is not defined within the ARPJC, but is defined multiple times in Title 8 of the Arizona Revised Statutes (Child Safety) as "the juvenile division of the superior court." A.R.S. § 8-

101(8) (governing adoption); A.R.S. § 8-201(20) (governing the juvenile court); A.R.S. § 8-531(9) (governing termination of a parent-child relationship).  We "read rules and statutes in conjunction with each other and harmonize them whenever possible."  *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 20, 282 P.3d 437, 441 (App. 2012).  Therefore, the plain language of ARPJC 103(F) divests the entire juvenile division of the superior court from proceeding on issues presently before that division, or newly presented to it, while an appeal is pending unless it is granted the authority to proceed by one of the exceptions in ARPJC 103(F).  The adoption proceeding was a newly presented issue and, thus, the juvenile court did not have the authority to proceed upon it unless the adoption fell within one of the enumerated exceptions contained within ARPJC 103(F).

**¶16**        As our colleague's dissent correctly notes, ARPJC 103 governs the rights and procedures attendant to an appeal from a final juvenile court order.  *See infra* ¶ 38.  The dissent concludes ARPJC 103(F) can be applied only to issues arising within the appealed case, basing its reasoning on the structure of ARPJC 103 and the use of the terms "an appeal," and "the appeal" throughout its subsections.  *See infra* ¶ 38.  While we acknowledge that ARPJC 103 refers to the specific appeal taken by the aggrieved party from a final juvenile court order, we do not agree that the use of those terms undermines our conclusion that ARPJC 103(F) applies also to issues arising in a separately filed case that impact the appeal.  On this point, we note that ARPJC 103(F) defines the juvenile court's authority to proceed on "an issue" — not "a case."  ARPJC 103(F)(4) is clearly intended to preserve the *status quo* in regard to the subject matter of an aggrieved party's appeal by preserving, uncompromised, the relief sought by that party on appeal.  To allow the relief sought in an appeal to be frustrated merely because there happens to be a case involving the same child with a different case number would encourage gamesmanship and thwart the rule's intent.   Here, the court proceeded to determine an issue that directly undermined the appellate court's ability to grant the relief requested on appeal, as we explain below, and we cannot suppose that the rule was drafted with an eye toward such a result.

## B.      The Exceptions of Ariz. R.P. Juv. Ct. 103(F) Are Inapplicable.

**¶17**        Upon the filing of an appeal, ARPJC 103(F) divests the juvenile court of the legal authority to act upon issues "remaining before it or newly presented to it," unless the matters to be ruled upon meet certain specific criteria delineated within ARPJC 103(F)(1) through (5).  Of the five exceptions, only subsection (4) is pertinent to this case.  Therefore, the juvenile court would have been within its authority to grant the adoption if its "ruling on the issue would not [have] legally or practically prevent[ed]

the appellate court from granting the relief requested [by Father] on [his termination] appeal." Ariz. R.P. Juv. Ct. 103(F)(4).

¶18　　　　Here, Father sought within his termination appeal to have his parental rights restored and, following restoration, requested a remand to the juvenile court in order for the court to implement an appropriate case plan. The granting of the adoption, however, both legally and practically prevented this Court from granting the requested relief, in violation of ARPJC 103(F)(4). "On entry of the decree of adoption, the relationship of parent and child between the adopted child and the persons who were the child's parents before entry of the decree of adoption is *completely severed* and all the legal rights, privileges, duties, obligations and other legal consequences of the relationship cease to exist, including the right of inheritance." A.R.S. § 8-117(B) (emphasis added). Therefore, the adoption of the children, while Father's termination appeal was pending, effectively terminated his parental rights a second time, and did so without his knowledge or consent. Father was then forced to move the juvenile court to set aside the adoption, and in doing so, bore the additional burden of having to demonstrate grounds for setting aside the adoption by clear and convincing evidence. Ariz. R.P. Juv. Ct. 85(D). After the court denied his motion to set aside the adoption, Father was required to initiate an appeal of that decision to obtain the relief — restoration of his parental rights — he had ostensibly previously obtained in his prior appeal from the termination order.

¶19　　　　DCS argues Father's termination appeal was not mooted by the adoption (and therefore the adoption did not legally or practically prevent the relief Father sought) because this Court ultimately vacated the termination order as Father requested, meaning ARPJC 103(F)(4) was not implicated. *Roberto F.*, 232 Ariz. at 59-60, ¶ 73, 301 P.3d at 225-26. We disagree for several reasons. First, DCS fails to take into account that the *Roberto F.* Court was apparently not made aware of the adoption and, thus, never had the issue of mootness before it. Second, whether an underlying juvenile court action may moot the appeal is not the standard, nor is it a consideration, under ARPJC 103(F)(4). Third, the argument ignores that although this Court vacated the judgment terminating Father's parental rights, Father remained legally and practically prevented from realizing the relief he was granted by this Court's decision as a result of the by-then concluded adoption proceedings and concomitant juvenile court orders

that had entered during the pendency of Father's termination appeal, of which DCS, Foster Parents, and the juvenile court were fully aware.[6]

¶20        On this point, we find persuasive the reasoning set forth in *In re JK*, 661 N.W.2d 216 (Mich. 2003). Although in that case there was a statutory provision specifically prohibiting the granting of an adoption during the pendency of a termination appeal, Mich. Comp. Laws § 710.56(2), the Michigan Supreme Court also found the basic structure of the judicial system made such a practice invalid:

> [T]o allow such an adoption to occur would be to distort the nature of this Court's review of the termination decision by requiring, as an effective precondition to the reversal of the termination order of the trial court, that we be prepared also to undo an adoption that has become a *fait accompli*. Parents whose rights have been terminated by the trial court are entitled to appellate review of this decision without that review being compromised by the specter of appellate courts having to undo an adoption as a concomitant act to the granting of relief for those parents. Such a result is simply contrary to the structure of the justice system established by our constitution and laws.

*In re JK*, 661 N.W.2d at 217; *see State ex. rel. T.W. v. Ohmer*, 133 S.W.3d 41, 43 (Mo. 2004) ("Proceeding with adoption while the termination is reviewed on appeal compromises the parent's right to appellate review by requiring, as an effective precondition to reversal of the termination, that the appellate

---

[6]        DCS also cites *Jordan C. v. Arizona Department of Economic Security*, 223 Ariz. 86, 92 n.8, ¶ 15, 219 P.3d 296, 302 n.8 (App. 2009), in support of its contention that Father's relief was not legally or practically precluded by the children's adoption. In *Jordan C.*, this Court reversed the termination of a mother's parental rights, finding there was insufficient evidence to establish one of the statutory grounds for termination. *Id.* at 89, ¶ 2, 219 P.3d at 299. While the mother's termination appeal was pending, one of the children was adopted; the child's counsel then filed a "motion to strike or dismiss" the appeal pertaining to that child as moot. *Id.* at 92 n.8, 219 P.3d at 302 n.8. The court denied the motion and declined to issue an advisory opinion on the effect its decision would have upon the adoption order. *Id.* DCS argues this shows the adoption was not void and did not prevent the court from granting the relief sought by mother on appeal. *Jordan C.*, however, does not stand for the premise DCS asserts, as the issue of the adoption's validity was not properly before the court on appeal, and it therefore declined to address the issue.

court be prepared to address a separate adoption proceeding."); *see also* A.R.S. § 8-235(A) (granting to "[a]ny aggrieved party in any juvenile court proceeding" the right to appeal to this Court from a final juvenile court order).

¶21 We believe this result also comports with our supreme court's intent in promulgating the Arizona Rules of Procedure for the Juvenile Court as it protects the best interests of the children at issue. *See Xavier R. v. Joseph R.*, 230 Ariz. 96, 98, ¶ 6, 280 P.3d 640, 642 (App. 2012) (noting that "we interpret the rules of juvenile procedure 'in a manner designed to protect the best interests of the child'") (quoting Ariz. R.P. Juv. Ct. 36); Ariz. R.P. Juv. Ct. 67. The practice of granting an adoption while a parent appeals a termination order potentially harms the children's interests in permanency and stability, and possibly traumatizes the children at issue with constant changes to their caretakers' parenting status. *See* Ariz. R.P. Juv. Ct. 85 comm. cmt. ("It was the opinion of the Committee that proceedings to set aside an adoption be more formal than other types of juvenile proceedings due to the potential impact on all parties, particularly the child."); *In re JK*, 661 N.W.2d at 225 (noting this procedural position leaves the court with a decision that will impose suffering on either the birth parent(s) or adoptive parent(s), and that "[i]t is in the interests of both the natural parent and the child . . . that the termination decision not be reviewed . . . under the specter of having to remove the child from the adoptive parents . . ."); *Kobinski v. Nev. Welfare Div.*, 738 P.2d 895, 898 (Nev. 1987) (noting that an adoption while a parent's termination appeal is pending, and possible reversal of the termination decision, raises "the possibility of future trauma to the child"); *In re J.R.G.*, 624 So.2d 273, 275 (Fla. Dist. Ct. App. 1993) (affirming the termination of the parent's rights, but noting that if it had reversed the termination order, the unwinding of an adoption ordered pending the termination appeal "could have caused serious consequences [for the children and interested adults]").

¶22 Parents have a protected, fundamental liberty interest in the "care, custody, and management of their child." *Stewart v. Superior Court*, 163 Ariz. 227, 229, 787 P.2d 126, 128 (App. 1989) (citing *Santosky v. Kramer,* 455 U.S. 745, 753 (1982)); *see Pima Cnty. Juvenile Severance Action No. S-120171*, 183 Ariz. 546, 548, 905 P.2d 555, 557 (App. 1995). Although this interest is not without limits, *see Graville v. Dodge*, 195 Ariz. 119, 124, ¶ 20, 985 P.2d 604, 609 (App. 1999), the interest "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky*, 455 U.S. at 753. To this effect, we agree with the reasoning set forth by the Oklahoma Supreme Court facing a similar circumstance:

The determination that a child is eligible for adoption without parental consent does not merely infringe that fundamental liberty interest, it is a significant step in destroying it. For this reason, the result achieved in an adoption proceeding is not the only consideration even if the result is perceived to further the best interests of the child. Parents must be provided the opportunity to fully and finally litigate the issue of their child's eligibility for adoption, including an appeal, *before* an adoption can be finalized and the child is permanently removed from the family.

The interests of all parties to an adoption are furthered by speedy and efficient proceedings. "But the Constitution recognizes higher values than speed and efficiency." [*Stanley v. Illinois*, 405 U.S. 645, 656 (1972)]. Until the issue of a child's eligibility for adoption has been finally determined, the child and the natural parents "share a vital interest in preventing erroneous termination of their natural relationship." *Santosky*, 455 U.S. at 760. Thus, the best interests of the child are not furthered by judicial shortcuts, intentional or unintentional, which reach an expeditious result but fail to recognize the fundamental nature of the right of parents to the care, custody, and management of their child.

*In re Adoption of L.D.S.*, 155 P.3d 1, 8, ¶¶ 12-13 (Okla. 2006) (supplemental opinion on rehearing).

**¶23**        Therefore, we hold ARPJC 103(F) divests the juvenile court of jurisdiction to grant an adoption order while a parent, whose consent would otherwise be required for the adoption, is appealing an order terminating his or her parental rights.[7]

**II.    Consideration of Other Rules of Procedure for the Juvenile Court.**

**A.    Ariz. R.P. Juv. Ct. 79(A)(3).**

**¶24**        None of the parties cited ARPJC 79(A), which sets forth certain information a petitioner must include in a petition to adopt filed with the juvenile court. For instance, and as pertinent here, the rule directs the petitioner to state in the adoption petition "[w]hether any termination of parental rights proceeding is pending, including any appeal[.]" Ariz.

---

[7]    As we reach our conclusion based upon the language of ARPJC 103(F), we do not reach Father's due process arguments.

R.P. Juv. Ct. 79(A)(3). It is self-evident that, consistent with the preclusive effect of ARPJC 103(F), this requirement is intended to inform the juvenile court of the pendency of an appeal from a termination order. Requiring such disclosure underscores the intent of our supreme court that absent the consent of the parents, or the completion of a parent's appeal of a termination order, the juvenile court is not to proceed with an adoption proceeding. A.R.S. § 8-106; Ariz. R.P. Juv. Ct. 81, 103(F).

¶25        Moreover, the substance of ARPJC 79(A) itself supports our conclusion. *See City of Phx. v. Superior Court*, 144 Ariz. 172, 176, 696 P.2d 724, 728 (App. 1985) ("Statutory construction requires that provisions of a statute be read and construed in the context of related provisions and in light of its place in the statutory scheme."). ARPJC 79(A) provides that a petition to adopt must provide information regarding: (1) whether the child to be adopted is subject to the requirements of the Indian Child Welfare Act; and if so, the petition must also include, *inter alia*, whether the child is a ward of a tribal court or is reasonably believed to be a resident or domiciliary of an Indian reservation; (2) whether all necessary consents to the adoption have been obtained, noting any exceptions provided by law; (3) whether any termination of parental rights proceedings, including any appeals, are pending; and, if applicable, (4) whether approval has been granted through the Interstate Compact on the Placement of Children (ICPC).[8] *Id.*

¶26        Each piece of information required by ARPJC 79(A) to be provided to the juvenile court seeks to clarify and establish the juvenile

---

[8]        The ICPC is a primarily procedural statute, adopted by all 50 states, that is applicable to adoptions. *J.D.S. v. Franks*, 182 Ariz. 81, 89, 893 P.2d 732, 740 (1995). Its purpose is "to foster cooperation among the states in the placement of children and to promote '[a]ppropriate jurisdictional arrangements for the care of children.'" *Id.* (quoting A.R.S. § 8-548, art. I). The ICPC provides a "system of coordination among the states when a child born in one state is placed for adoption in another state." *Id.* It requires certain information "be supplied to the state to which the child is moving," as well as the approval of the child's placement from both the sending state's and receiving state's ICPC administrators. *Id.* Absent compliance with the requirements of the ICPC and the applicable laws of the receiving state concerning the placement of children, "the 'sending agency' shall not send the child to another state for placement." *Id.* (citing A.R.S. § 8-548, art. III(a)).

court's authority to proceed with the adoption. *See Michael J. Jr. v. Michael J. Sr.*, 198 Ariz. 154, 156, ¶ 10, 7 P.3d 960, 962 (App. 2000) ("The [Indian Child Welfare] Act grants tribal courts exclusive jurisdiction over child custody proceedings involving Indian children domiciled on a reservation . . . and concurrent but presumptively tribal jurisdiction in proceedings involving Indian children not domiciled on a reservation." (citing Indian Child Welfare Act of 1978, 25 U.S.C. § 1911(a)-(b)); *Lee v. Superior Court*, 25 Ariz. App. 55, 57, 540 P.2d 1274, 1276 (1975) ("Parental consent is a jurisdictional prerequisite in the absence of a showing of the existence of the specific statutory conditions or exceptions rendering consent unnecessary."); *Franks*, 182 Ariz. at 92-93, 893 P.2d at 743-44 (although noting "[c]ompliance with the ICPC is not a prerequisite for exercising jurisdiction," stating a possible sanction for noncompliance with the ICPC could be the "retention of jurisdiction in the sending state"). Put otherwise, the information sought by ARPJC 79(A) is jurisdictional or procedural in nature.[9]

**¶27** Further, if the juvenile court was within its jurisdiction to proceed with an adoption while a parent appealed an order of termination, the portion of ARPJC 79(A)(3) requiring a petitioner to inform the juvenile court of a pending appeal of a termination order would be rendered meaningless as the information would have no bearing or import upon the action taken by the court. *See Ariz. Dep't of Rev. v. Action Marine, Inc.*, 218 Ariz. 141, 143, ¶ 10, 181 P.3d 188, 190 (2008) ("We construe related statutes together, and avoid interpretations that render statutory provisions meaningless, unnecessary, or duplicative.") (internal citations omitted).

## B.    Ariz. R.P. Juv. Ct. 85(A)

**¶28** Foster Parents argue that a portion of ARPJC 85(A) would be rendered meaningless if the juvenile court was precluded from granting an adoption decree by the filing of a notice of appeal from an order terminating a parent-child relationship. We disagree.

**¶29** ARPJC 85(A) provides: "A person seeking to set aside a final order of adoption shall file a motion to set aside the adoption with the clerk of the court. The motion shall allege grounds only as permitted by Rule 60(c), Ariz. R. Civ. P." Arizona Rule of Civil Procedure 60(c), in turn,

---

[9]    It is for this reason we cannot agree with the dissent's statement that the obvious purpose of ARPJC 79(A)(3) disclosure requirement is so the information may be considered by the juvenile court in determining whether the adoption is in the best interests of the child. *See infra* ¶ 39.

delineates several grounds upon which a party may obtain relief from a final judgment or order:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(d);
>
> (3) fraud . . . , misrepresentation or other misconduct of an adverse party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
>
> (6) any other reason justifying relief from the operation of the judgment.

¶30        Foster Parents argue that "if an appeal of a termination order precludes all subsequent action related to that order, including an adoption based upon that order, there could never be an adoption judgment in need of being set aside for the reason set forth in Rule 60(c)(5)."  The dissent likewise makes this point.  *See infra* ¶ 39.  We find this argument unpersuasive.  ARPJC 85(A) allows for an adoption to be set aside pursuant to *any* of the grounds set forth in Rule 60(c), not just Rule 60(c)(5).  Therefore, our holding does not render ARPJC 85(A)'s incorporation of Rule 60(c) meaningless nor impact ARPJC 85(A) in any meaningful way; it merely shifts the applicable ground for setting aside the adoption order, under the circumstances in this case, to Rule 60(c)(4), as an order of adoption entered without jurisdiction is void.  *See In re Adoption of Hadtrath*, 121 Ariz. 606, 608, 592 P.2d 1262, 1264 (1979) ("A judgment may be attacked as void upon its face if . . . jurisdiction to render the particular judgment or order entered [is lacking].").  Moreover, that Rule 60(c)(5) may apply less frequently to motions to set aside an adoption does not render that subsection meaningless either, as it still clearly has applications to civil orders and judgments.

## III.    An Application for a Stay of a Termination Order Is Not Required

¶31        Foster Parents argue that the juvenile court is within its authority to order the adoption during the pendency of a termination

appeal absent a parent requesting and obtaining a stay of the termination order. *See* A.R.S. § 8-235(B); Ariz. R.P. Juv. Ct. 103(B). This can only be the case if the jurisdictional strictures of ARPJC 103(F) are ignored.

**¶32** As noted previously, the final order terminating the parent-child relationship is "conclusive and binding on all persons from the date of entry." A.R.S. § 8-538(A). And there is no question that order "shall not be suspended and the execution of the order shall not be stayed pending the appeal, except that the appellate court may, by order, suspend or stay the execution of the order if suitable provision is made for the care and custody of the juvenile." A.R.S. § 8-235(B); *see* Ariz. R.P. Juv. Ct. 103(B). In the immediate case, the order that is not suspended or stayed is the termination order. Clearly, if the termination order is not suspended or stayed, Father's parental rights remain terminated during his appeal.[10] However, Foster Parents' contention that a parent must request a stay to avoid the outcome that occurred in this case is premised upon the assumptions that (1) Father had knowledge of the subsequent adoption action and the need for a stay (which he did not), and (2) Father's filing of an appeal had no impact upon the jurisdiction of the juvenile court to proceed with the adoption, which is incorrect. *See supra* Part I (A) & (B).

## IV. Termination by Court Order.

**¶33** Consent to an adoption is normally required of the biological or adoptive parents. A.R.S. § 8-106(A). Consent is not required, however, if the parent's rights have been "terminated by court order." A.R.S. § 8-106(B)(2). Foster Parents argue that "court order" does not equate to "court order, not subject to appeal," and that the adoption was valid because, at the time of entry, Father's rights had been terminated by the juvenile court order and all other requirements for the adoption had been met. We find this argument unavailing as well.

---

[10] The dissent contends our holding that the juvenile court is divested of jurisdiction to grant an adoption while a parent appeals a termination order renders the termination order "neither conclusive nor binding." *See infra* ¶ 40. But our holding does not go so far. During the pendency of the appeal, the parent and child will still be divested "of all legal rights, privileges, duties and obligations with respect to each other" except for the child's right to inherit and receive support from the parent. A.R.S. § 8-539. For example, DCS would not be required to continue providing services to the parent pending the appeal, nor would the parent be able to exercise visitation rights. Our holding simply precludes a termination appeal from being frustrated by an expeditious adoption.

¶34 Article 6, Section 5(5), of the Arizona Constitution grants to the supreme court the power to "make rules relative to all procedural matters in any court in this state." *Maricopa Cnty. Juvenile Action No. J-84536-S*, 126 Ariz. 546, 547, 617 P.2d 54, 55 (App. 1979). Employing this power, the supreme court promulgated the ARPJC. *Id.* It is within the legislature's authority to "enact procedural rules that supplement, but do not contradict," the rules promulgated by our supreme court. *David G. v. Pollard ex rel. Cnty. of Pima*, 207 Ariz. 308, 311, ¶ 15, 86 P.3d 364, 367 (2004).

¶35 In the instant case, ARPJC 103(F) and § 8-106 are not in conflict. ARPJC 103(F) merely divests the juvenile court of jurisdiction to proceed with an adoption during the pendency of the termination appeal. After the termination appeal has concluded, the party petitioning for adoption must then still obtain any remaining consents required by § 8-106 in order for the juvenile court to grant an adoption.

## CONCLUSION

¶36 As ARPJC 103(F) operates to preclude the juvenile court from entering an adoption order while a parent appeals a termination order, the adoption decree in this case was void. We therefore vacate the juvenile court's adoption order and the denial of Father's motion to set aside the adoption, and we remand the case to the juvenile court for proceedings consistent with this opinion.


**N O R R I S**, Judge, specially concurring in the result:

¶37 With respect, I do not agree with the majority's conclusion that Arizona Rule of Procedure for the Juvenile Court 103(F), and subsection (4) in particular, "divests" the juvenile court of jurisdiction to enter an order of adoption during the pendency of a parent's appeal from an order terminating his or her parental rights. I concur, however, in the result reached by the majority.

¶38 Rule 103 governs appeals from final orders of the juvenile court. As the majority recognizes, Rule 103(F) allows the juvenile court to address and resolve certain matters during the pendency of an appeal. Although the rule does not explicitly limit these matters to the appealed case, to construe the rule as restricting the authority of the juvenile court to act in other, separate cases, as the majority does here, conflicts with the wording and overall structure of Rule 103 and its subparts. *See generally Potter v. Vanderpool*, 225 Ariz. 495, 498, ¶ 8, 240 P.3d 1257, 1260 (App. 2010)

(providing guidelines for construing court rules). For example, Rule 103(A) speaks in terms of a particular appeal and describes "the parties to the appeal"; Rule 103(B) authorizes an appellate court to suspend or stay the execution of an order of the juvenile court in "the appeal"; and Rule 103(F) allows the juvenile court to proceed within its legal authority during "the pendency of an appeal," subject to certain exceptions.

¶39 Other juvenile court rules also undermine the majority's conclusion. For example, Rule 85(A) authorizes a person to seek to set aside an adoption alleging those grounds as permitted by Arizona Rule of Civil Procedure 60(c), the rule for vacating civil judgments. Under Rule 60(c)(5), a court may relieve a party from a judgment when it is based on a prior judgment that has been "reversed or otherwise vacated." Accordingly, Rule 85(A) authorizes the juvenile court to vacate a judgment which is based on a prior judgment that has been reversed or otherwise vacated. If, as the majority concludes, Rule 103(F)(4) divests the juvenile court of jurisdiction to act in a separate proceeding, then relief under Rule 60(c)(5), as incorporated in Rule 85(A), would seldom if ever be needed. And, as the majority notes, Rule 79(A)(3) requires an adoption petitioner to disclose in the adoption petition whether "any termination of parental rights proceedings is pending, including any appeal." As the majority correctly notes, this disclosure requirement is designed to "inform the juvenile court of the pendency of an appeal from a termination order." *See supra* ¶ 24. The obvious purpose of this disclosure requirement is to enable the juvenile court to consider whether granting the adoption during the pendency of the appeal would be in the best interests of the child. Rule 79(A)(3) would have little to no practical purpose if Rule 103(F), and more particularly subsection (4), divests the juvenile court of jurisdiction to enter an order of adoption during the pendency of an appeal from a termination order.

¶40 Arizona statutes concerning termination of parental rights and adoption also undermine the majority's conclusion. Section 8-538(A) (2014) states that a termination order is "conclusive and binding on all persons from the date of entry." Further, A.R.S. § 8-106(B)(2) (2014) does not require a parent whose parental rights have been terminated to consent to adoption. Although a parent may appeal a termination order, *see infra* ¶ 42, these statutes have the combined effect of investing the juvenile court with jurisdiction to grant an adoption pending the parent's appeal of a termination order. If, however, the juvenile court is divested of jurisdiction to grant an adoption when an appeal from a termination order is pending, then the termination order is neither conclusive nor binding and A.R.S. § 8-106(B)(2) is of limited effect.

**¶41** For these reasons, I disagree with the majority's conclusion that Rule 103(F) divests the juvenile court of jurisdiction to grant an adoption during the pendency of a parent's appeal from a termination order. I agree with the majority, however, that the juvenile court's order refusing to set aside the adoption order cannot stand. As discussed above, under Rule 85(A) the juvenile court may relieve a party from a judgment when it is based on a prior judgment that has been reversed or otherwise vacated. That is precisely what happened here.

**¶42** As the majority correctly notes, parents have a protected fundamental liberty interest in the care, custody, and management of their children. *See supra* ¶ 22. And, a parent is entitled to appeal an order terminating his or her parental rights. A.R.S. § 8-235(A) (2014) (any aggrieved party may appeal from final juvenile court order). Further, reversal of a judgment generally restores the parties to their original positions. *Markel v. Transamerica Title Ins. Co.*, 103 Ariz. 353, 362, 442 P.2d 97, 106 (1968), *overruled on other grounds by Burch & Cracchiolo, P.A. v. Pugliani*, 144 Ariz. 281, 697 P.2d 674 (1985). Under these authorities, the juvenile court should have vacated the adoption order. Accordingly, I concur in the result and, thus, in the relief granted by the majority.

